Judge Tucker.
Mrs. Braxton brought a bill against several persons, and, among others, the appellants, for dower, and obtained an absolute decree against them, without any plea or answer in their behalf, by their mother, who was appointee: guardian ad litem, but who is neither shewn to have appeared, or to have been served with notice of that order, neither was there any decree nisi, or notice of such a decree against these defendants or their guardian, to be discovered in the record, in the original suit. Afterwards, they brought a bill of review by their next friend, and assigned the following reasons for setting aside that decree : First, that the yearly profits of the dower lands were rated too high by the Commissioners appointed by the Court to value the same ; secondly, that they were not defended in the suit; and, thirdly, “ that they have discovered since the said “ decree was pronounced, that A. Lee, their grandfather, 11 purchased the lands in question of Carter Braxton, and, they are informed and believe, was let into poses- *383 4* slon thereof by the said Carter Braxton, prior - to 44 his marriage with the complainant Elizabeth, although 44 the deed conveying the legal title night not have been 64 made until after the marriage j wherefore they conceive 64 that she has no title to dower iu the lands, which, in 44 equity, belonged to another before her marriage with '■4 the said Cat ter B axicn”
As to the first of die points> there is no proof in the record, that I can discover, that the lands were estimated too high by the Commissioners. But, inasmuch as the hill against them was not regularly taken for confessed, nor any decree irsi in the cause either served upon them, or tfcvir guardian appointed by the Court to defend them in that suit, ncr does any such decree appeal- to have been everrarde in the cause, as to them or their guardian, nor any proof that the person so appointed guardian, either liad notice of such appointment, or voluntarily appeared to defend the suit, nor that any day was given to the infants to shew cause against the decree when they should respectively come of age, I think the decree, as to them, was not only erroneous, but absolutely void ; and, consequently, the decree of the Chancellor, reversing that decree upon this bill of review, as to those defendants, is so far perfectly correct.
As to the abstract question which was argued, whether, . if a man seised of lands in fee-simple, aliene the same for a valuable consideration, and gives the purchaser possession of them, and then marides, and then cxeccutes a conveyance for the lands ; whether, in this case the wife shall not be barred of her dower in a Court of Equity ? ft is, I conceive, not necessary to decide it at present. Cases ur-iy be put, which I think would operate as a bar of dower. As if a seised of lands in fee-simple, should marry h woman privately, and then, with her privity and consent, sell his lands for a valuable consideration, and execute a convcvance for them to the purchaser, and die, and then the wife should demand dower of the lands so aliened, and show that the same was *384 done after her marriage ; yet in that case she ought te be barred by reason of the fraud and covin on her part., as well as on the part of the husband; and this, notwithstanding she might have been an infant as well as a feme covert at the time of the alienation. For covin and consent, as Sir Edward Coke expresses it, in such a case should suffocate the right which appertained' to her, and the wrongful manner avoid the matter that is lawful ;(a) and this at common law as well as in equity.
But the record before us presents no such case. The suggestions in the bill are extremely vague, and the evidence of David Woodroof the only witness to that point, (for I throw the affidavits taken before the bill filed, out of the question,) is equally so. If the fact were, that Lee purchased as early as the year 1757, and that he continued in Braxton’s employ as his steward, residing upon the principality in extent, which Braxton held in a remote county, and made purchases from him from, time to time, without demanding conveyances for the lands so purchased, the charge of covin and concealment might, perhaps, be retorted upon him. At least, such laches on his part, would afford a strong argument in favour of Mrs. Braxton’s claim to her dower. Besides, the clause of warranty in Braxton’s deed, was probably intended to afford a compensation to Lee from Braxton’s heirs, incase his* wife should survive him and, demand her dower of these lands. And such a warranty was at that time an ample security for such compensation ; as Braxton had more than twenty times as much land in the tract upon which Lee resided as his steward. Having accepted the warranty under such circumstances, I think he ought not to be let in to defeat the legal rights of the widow, but left to his remedy against the heirs of Mr. Braxton, upon the warranty.
The whole merits of the case being brought before th& Chancellor by the bill of review, and the defendant’s answer thereunto, and the cause being equally open as up-’ *385 jn a rehearing,(a) I think the Chancellor ought to have decreed to the complainant in the Original suit, her dower in the lands of the complainants in the bill of review, to be assigned to her by Commissioners for that purpose to be appointed, and a valuation of the annual rents and profits thereof to be made by them, from the—— day of June, 1800, when the original bill was filed against the present appellants ; and to be paid to the present appellee by the appellants or their guardian, unless the parties, to avoid the expense of such Commissioners, should agree to the former report, survey, and allotment, in the original suit; or should agree to make a new allotment only, without any other report or survey.
A regular consequence of the preceding opinion is, that the decree upon the forfeited forthcoming bond, taken upon a writ of fieri facias, sued out in behalf of the appellant, against the appellees, on the first mentioned decree, ought to remain as a security, so far as it will extend, for the payments of the rents, issues, and profits, which may be awarded to the appellant in pursuance of the decree now to be made, and her costs of suit: and, therefore, that the decree, reversing that decree with costs, is erroneous, and ought to be reversed, and the cause sent back, with directions to be proceeded in according to the principles in the decree now to be made.
Judge Roane.
The decree of the 26th of March, 1802, is erroneous, so far as it relates to the present appellees, in this, that no day is given them, being infants, to shew cause against the same, after they shall have attained their age. It is also erroneous in this, that the decree v/as rendered without any answer being filed on. the part of the appellees, nor was the bill regularly taken for confessed as to them : and both these errors are. *386 t0 considered, as errors apparent on the face of the decree itself.
For this cause, then, and not on the ground of new matter, or of an excessive allowance for profits, (admitting the cause to have been regularly heard,) the bill of review-was rightly ordered, to be received by this Court. This ground of error went to the -whole decree; and, therefore, the Chancellor’s partial allowance of the bill was erroneous. From anote I have of the case when it was formerly before the Court, this was; the real ground on which the bill of review was directed to be received ; though the Chancellor might have been misled in this particular, by the transcript of the judgment of this Court, it stating, (after having said that the bill should not have been rejected,) that “the appellants should “ have been permitted, in the ordinary course, to prove “ the allegations thereofwhence it might be inferred, that the bill was allowed by this Court on the merits.
If, upon those merits, the cause were now in favour of the appellees, although it was not regularly proceeded in as to them, the decree of reversal ought, perhaps, to be simply confirmed, and the cause entirely ended: and this brings us to consider those merits. As to the allowance of profits by the Commissioners, they state that the one third of the land which fell to the widow, was superior in value to the other two thirds of the tract: they regret this, and submit it to the consideration of the Court; but, perhaps, the Court can find no remedy therefor, inasmuch as the law seems to require that, in dower, the land is to be divided into three equal parts, and then allotted; which was done in this casé. The profits of the whole land are estimated by the Commissioners at 150 dollars per annum; and, certainly, therefore, fifty dollars are not an extravagant allowance for this third. The proofs, too, by the appellees’ witnesses, only reduce the value, severally, according to *387 the opinions of the witnesses, to forty and forty-five dollars per annum. If, therefore, the decree had been regular in other respects, no objection would lie to it on account of an excessive allowance for profits.
With respect to the new matter; it is said to have been discovered since the former decree, that Ambrose Lee purchased, and was put into possession of the lands in question, prior to Mr. Braxton’s marriage j but the allegation goes on to admit that the deeds might not have been made from Braxton to Lee, until after the marriage. This allegation is therefore a complete felo de se, unless, this sale and possession were known to Mrs. Braxton at the time of the marriage, (which is not charged in the bill, nor proved,) and unless Mr. Randolph is also correct in placing purchasers by marriage on the same footing, in equity, in this respect, with other subsequent purchasers with notice. This is a very important question ; but the facts in the present case do not make its decision absolutely necessary. I have found no cases placing a wife on a common footing with other purchasers with notice. So many considerations superior to that of interest, combine together with it, in relation to marriages, that I think it at least doubtful whether the ordinary doctrines with respect to money purchasers will apply also to the case of marriage. It seems unreasonable to require the wife, in the language of those cases, as soon as an adverse title is discovered, to stop her hand from completing the marriage, especially after the affections are engaged: on this point, however, I give no con - clusive opinion.
But, admitting for the present, that a wife stands on the same footing with other subsequent purchasers, let us test this case by the ground on which such purchasers are postponed in equity to prior purchasers who have not a legal title. In the case of Le Neve v. Le Neve,(a) it is said that the intent of the registration act being to secure subsequent purchasers against secret con *388 veyaqces, a subsequent purchaser shall be postponed to a prior-unregistered deed, if he had notice thereof; for that then ]le could n0t be prejudiced- This clear principie of equity will run through, and apply to every analogous case: and, accordingly, it is applied in the same act to the statuté of enrolments of 27 'Hen. VIII. which is pretty similar to our act of 1710; in short, it is applied to a case which is precisely the case at bar, if the wife is to be considered merely in the light of a subsequent bargainee for money. In that case it is held, that such subsequent bargainee shall be affected with notice of a prior right, in the same manner as if the prior purchaser had been by feoffment with livery of seisin. The ground on which these decisions go, (both on the acts of registration, and enrolment,) is that, “ although “ the subsequent purchaser has the legal estate, he is £- yet left open to any equity which a prior purchaser “ may have, and is postponed, because, having notice, he “ might have stopped his hand from próceeding.(a)
The ground, more particularly, on which this postponement takes place is, that the taking the legal estate after notice of a prior purchase, makes the party a mala fde purchaser; that it is & fraud, and a species of dolus malus ; and that it is a machinatio ad circumveniendum.(b) But when fraud and an unjustifiable machination is to be imputed, the proof of notice must be clear : and, accordingly, it is held in Hinc v. Dodd,(c) that “ a mere “ suspicion of notice” is not sufficient to induce the Court to break in upon an act of parliament; and that there must be clear and undoubted notice, to be a proper ground of relief.
In the case before us, independently of its not being charged or shewn that Mrs. Braxton knew of the sale to, or possession by, Ambrose Lee, that possession, at most, was very equivocal: it was, at most, but “ a mere suspicion of notice.” It was of a piece of wood land connected with a larger tract, of which it was originally part, and *389 liolden by a steward, who also held the whole tract; and therefore his possession did not afford that clear indicium of property, which results from a separate, exclusive possession of a distinct and separate tract of land.
This case, therefore, is deficient in facts whereon to oust Mrs. Braxton in equity of her legal title to dower ; even admitting that, in general, she is to be considered as an ordinary purchaser for money.
Upon the whole, my opinion is, that the decree now before us is correct in reversing the decree of March 6th, 1802, and the decree of March 12th, 1803, founded thereon ; but that, the reversal being justified in part on the ground that the original decree was rendered without the cause being properly matured for hearing as to these appellees, the decree before us is erroneous in not having further provided for a regular procedure against them from the bill upwards ; which being done, the cause would come on regularly to be tried on the merits: therefore, reversing the decree on this ground only, I am of opinion, that the cause be remanded for further proceedings from the bill, as amended, so as to make the appellees parties; and that the appellees should recover their costs, as the party substantially prevailing.
The following was entered as the opinion of the Court, viz. “ that there is no error in the said decree of the 44 Superior Court of Chancery, reversing so much of the “ decree of the 26th of March, 1802, as relates to the “ present appellees, and the decree of the 12th of March, “ 1803, founded thereon ; the said first mentioned de- “ cree having neither allowed the appellees (being in-44 fants) a day to shew cause against the same after they 44 attained their age, nor was grounded upon any an- “ swer of the appellees by their guardian or next friend, 44 regularly exhibited, nor, in default thereof, was the bill 46 as to them decreed to be taken for confessed: but that 4{ the said decree is erroneous in not setting aside all *390 CC ^le proceedings in the said cause, as relative to the “ present appellees, subsequent to the bill, and provia ding that the cause should be regularly matured for « trial on the merits, but instead thereof, barring the pre- “ sent appellant from a recovery td which she may be “ justly entitled: therefore, it is decreed and ordered, “ that the said decree be affirmed as far as it goes, and “ that the appellant pay to the appellees, as the parties “ substantially prevailing in this Court, their costs by “ them about their defence in this behalf expended. “ And this Court, proceeding to make such decree “ as the said Superior Court of Chancery ought to have “ made, doth further decree and order, that all the pro- “ ceedings in the cause, in which the decree of the 26th “ of March, 1802, was rendered, be set aside, subsequent “ to the amended bill by which the appellees were made “ parties, so far as they relate to ■ the present appellees ; “ and that the cause be regularly proceeded in and ma- “ tured for a hearing by the said Superior Court of “ Chancery, in order to a just decision upon the merits; “ for which purpose the cause aforesaid is remanded to “ the said Superior Court of Chancery.”

 Co. Litt. 35. a. 357. a. Litt. sect. 678.

 1 Atk. 290. Catterall v. Purchase

 3 Atk. 646.

 3 Atk. 646.

 Ibid.

2 Atk. 276.